UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSE GUILLERMO SANTIAGO, JR.,

          Plaintiff,

v.                                                 Case No. 20-cv-687-pp

FREDERICK GILBERT,
          Defendant.

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 28)**

Plaintiff Jose Guillermo Santiago, Jr., who is confined at the Racine Correctional Institution and is represented by counsel,[1] filed this civil rights case under 42 U.S.C. §1983. Dkt. No. 1. The court screened the complaint and allowed the plaintiff to proceed on an Eighth Amendment claim of deliberate indifference to serious medical need against Dr. Frederick Gilbert, based on allegations that Gilbert had prescribed the plaintiff a medication which the plaintiff believes caused him a severe allergic reaction. Dkt. No. 8 at 7-8. The defendant has filed a motion for summary judgment. Because there are genuine disputes regarding the material fact of whether the defendant acted with deliberate indifference when he prescribed the plaintiff amoxicillin, the court will deny the motion.

---

[1] The plaintiff filed the case *pro se*, but counsel appeared on his behalf on December 17, 2021. Dkt. No. 55.

1

## I. Facts[2]

The plaintiff has been confined at Racine Correctional Institution since February 13, 2014. Dkt. No. 31 at ¶1. The defendant works as a dentist at Racine. Id. at ¶2.

On October 18, 2019, the defendant extracted one of the plaintiff's teeth. Dkt. No. 31 at ¶7. He removed the tooth with no complications and gave the plaintiff verbal and written post-operative instructions. Id. After the extraction, the defendant prescribed the plaintiff amoxicillin, an antibiotic that is a semisynthetic version of penicillin. Id. at ¶11. Amoxicillin is a common antibiotic, and usually is the first choice to treat the bacterial infection that causes an abscessed tooth. Id. at ¶¶12-13.

### A. The Allergy List

The defendant asserts that as of the date of the extraction—October 18, 2019—the plaintiff "did not have a listed allergy to amoxicillin or penicillin in his medical records." Dkt. No. 31 at ¶16. In support of this assertion, he cites to his own declaration—Dkt. No. 32 at ¶15—and to the first page of the medical records he attached to that declaration—Dkt. No. 32-2 at 1. The first page of the medical records is an undated page titled "*Allergies*;" it does not explain who prepared the page or the source of the information on it. Dkt. No. 32-2 at 1. The page lists augmentin as an allergy in "active" status of "moderate"

---

[2] The court includes only material, properly supported facts in this section. See Fed. R. Civ. P. 56(c).

severity with the reaction symptom being a "rash;" the "Reviewed Date/Time" is 10/18/2018 at 1:41 CDT. Id. The page does not list penicillin.[3]

B. The Other Medical Records

The parties dispute whether other medical records indicated that the plaintiff was allergic to penicillin. The plaintiff says that the medical file contained a "Health History Update, signed by [the plaintiff] on October 22, 2018, which notes an allergy to Penicillin." Dkt. No. 76 at ¶49. In support of this assertion, the plaintiff's declaration references "Exhibit 1004 at 3," and says that the Health History Update has the word "Penicillin" handwritten on it. Dkt. No. 67 at ¶21. There is no Exhibit 1004 in the court record. There *is* an Exhibit 1002, which contains some of the plaintiff's dental records. Dkt. No. 71-1. Page 24 of Dkt. No. 71-1 is a document titled "Health History Update (Dental Services)." The form contains a series of yes/no questions; question #5 asks, "Are you allergic to anything, including dental anesthetic?" Id. The "Yes" box is marked to the left of the question; to the right, someone has handwritten a question mark and the word "Penicillin." Id. In area titled "COMMENTS FOR ANY 'YES' ANSWERS," there appears the handwritten notation "Different medication, Higher doses, cant remember what im alergic to." Id. The plaintiff appears to have signed the document and dated it "10-22-18;" a registered dental hygienist also signed the document and dated it "10.22.18"—

---

[3] The page *does* list amoxicillin, but the "Reviewed Date/Time" for the amoxicillin entry is October 23, 2019—several days *after* the date the defendant extracted the tooth and prescribed the amoxicillin. Id.

approximately a year before the extraction and the prescription of amoxicillin. Id.

The medical records provided by the parties contain three other Health History Update forms that pre-date the October 18, 2019 tooth extraction and amoxicillin prescription. One was signed by the plaintiff and a registered dental hygienist on October 11, 2017. Dkt. No. 71-1 at 25. Again, the "Yes" box is checked to the left of the question "Are you allergic to anything, including dental anesthetic?" Id. In the space provided for "COMMENTS FOR ANY 'YES' ANSWERS," the word "penecilin" appears. Id. Another form was signed by the plaintiff and a registered dental hygienist on June 16, 2016. Id. On this one, the "No" box is checked to the left of the question "Are you allergic to anything, including dental anesthetic?" Id. Yet another form was signed by the plaintiff and a registered dental hygienist on February 12, 2015. Id. On this one, neither the "Yes" nor the "No" box is marked next to the question "Are you allergic to anything, including dental anesthetic?" Id.

At his February 17, 2022 deposition, the defendant testified that the plaintiff's medical records said he was allergic to penicillin:

> Q    Did you check his chart before prescribing the amoxicillin?
>
> A    We were talking.
>
> Q    So did you check his chart at all before prescribing the amoxicillin?
>
> A    As we were talking, he - - and I told him that he, it says here that you're allergic to penicillin, not necessarily amoxicillin or Augmentin. The note said he was allergic to penicillin. We talked about that. He convinced me he wasn't, or never had had penicillin, and so the amoxicillin is what I prescribed.

> Q   So a person who is allergic to penicillin would not have an allergic reaction to amoxicillin?
>
> A   He said that he was not allergic to penicillin. His records said that he was. At the time, because it was that transition period between paper charts and the electronic charts, I, after talking to him extensively, decided to change it, that there was a mistake in the chart from the past, changed it so it could pull off that allergy and gave him the medication, or wrote the medication so he could get it.
>
> Q   This change, I want to understand, you made a change to the file?
>
> A   Yes. He said - - again, he said he wasn't allergic. I believed what he was telling me. So at that time I went in and changed the - - he was allergic to penicillin to not, and ordered the penicillin for him, or amoxicillin.

Dkt. No. 65 at 17:7 – 18:8.

### C. The Parties' Conversations

The parties also dispute the content of the conversations they had prior to the defendant prescribing the plaintiff amoxicillin. In his declaration in support of the summary judgment motion, the defendant averred that he recalls the plaintiff telling him that the plaintiff was *not* allergic to penicillin; the defendant averred that based on the information relayed to him by the plaintiff, he prescribed the plaintiff amoxicillin, "a semisynthetic version of penicillin." Dkt. No. 32 at ¶11. The defendant averred that as of October 18, 2019, the plaintiff did not have amoxicillin or penicillin allergies listed in his medical records; he averred that there *was* an alert for augmentin but that his "conversation with [the plaintiff] convinced [him] that [the plaintiff] was not allergic to anything." Id. at ¶15. The defendant averred that because the

5

plaintiff said he was not allergic to penicillin "at that October 18, 2019 appointment, and because the medical records did not contain a note indicating that the plaintiff was allergic to penicillin or amoxicillin," the defendant "over wrote the computer system flagging the allergy to augmentin and prescribed amoxicillin." Id. at ¶16.

In opposition, the plaintiff averred that the defendant never asked the plaintiff if he was allergic to penicillin—not during the October 18, 2019 conversation and not at any other time—and that the plaintiff never told the defendant that he was not allergic to penicillin or amoxicillin. Dkt. No. 67 at ¶¶8, 12. The plaintiff averred that after the October 18, 2019 tooth extraction, the defendant asked the plaintiff if he was allergic to any medication; the plaintiff averred that he responded that he was allergic to augmentin. Id. at ¶6. The plaintiff averred that during that October 18, 2019 conversation, he told the defendant that he'd previously had an allergic reaction to augmentin. Id. at ¶7. The plaintiff averred that at no time during that October 18, 2019 conversation did he inform the defendant that he was not allergic to any medication; he emphasized that he had known about his augmentin allergy for years. Id. at ¶9. The plaintiff averred that during the October 18, 2019 conversation, he never told the defendant that the medical notes listing an augmentin allergy were a mistake, and that he never told the defendant that he did not know why the allergy alert was listed in the medical file.[4] Id. at ¶¶10-

---

[4] The defendant disputes the plaintiff's assertions that he told the defendant he was allergic to augmentin or that he had previously had an allergic reaction to augmentin. Dkt. No. 70 at ¶¶30-32.

6

11. In addition, the plaintiff asserted that his medical records contained information that he was allergic to penicillin. Id. at ¶21.

When he filed his reply brief in support of the motion for summary judgment, the defendant filed another declaration. Dkt. No. 71. In this declaration, he again averred that he recalled the plaintiff saying during the October 2019 appointment that he was not allergic to penicillin. Id. at ¶7. The defendant averred that he had relied on the plaintiff's "statement that he was not allergic to anything to guide [the defendant's] decision to prescribe amoxicillin." Id. at ¶9.

   D.   The Effects of Amoxicillin

The defendant avers that amoxicillin is an antibiotic that is a semisynthetic version of penicillin. Dkt. No. 31 at ¶11. At his February 2022 deposition, the defendant testified that if someone allergic to augmentin is prescribed amoxicillin, the amoxicillin would probably cause an allergic reaction because the drugs are in the same pharmaceutical family. Dkt. No. 65 at 25:3-12. The defendant also testified that if someone allergic to augmentin is prescribed penicillin, the penicillin might cause an allergic reaction because "it's the same family of drug, or the same base, the same family of drugs, so to prevent problem you avoid it and go to another medication." Dkt. No. 65 at 25:13-19. The defendant does not dispute that he was aware that augmentin contains amoxicillin as one of its ingredients, and that individuals allergic to amoxicillin would be allergic to augmentin and penicillin. Dkt. No. 70 at ¶¶55-56. The defendant does not dispute that he was aware of the symptoms an

individual could suffer if prescribed a medication to which that person is allergic, including difficulty breathing and death. Id. at ¶57. The defendant does not dispute that he was aware of alternatives to augmentin and amoxicillin that were available for him to prescribe on October 18, 2019. Id. at ¶58.

E. The Plaintiff's Symptoms

The plaintiff took the amoxicillin as prescribed by the defendant. Dkt. No. 76 at ¶36. After consuming the amoxicillin, the plaintiff suffered the following symptoms: 1) swollen hands, feet and face; 2) the development of a red rash all over his body that looked like chicken pox; 3) the skin on his face and hands becoming red; 4) terrible itching; 5) feeling heat on his body such that he slept with the window open, the fan on and only his underwear although it was winter outside. Id. at ¶37. The plaintiff required several visits to Racine's Health Services Unit (HSU) to receive treatment for these symptoms. Id. at ¶38. Within several days after consuming the amoxicillin, the plaintiff's throat began to close, he could not breathe and he had difficulty swallowing. Id. at ¶39. As a result of the plaintiff's inability to breathe, a nurse from Racine's HSU called 911 and the plaintiff was taken by ambulance to an emergency room for treatment. Id. at ¶40. While in the ambulance, the plaintiff was put on an oxygen machine, given an IV and given a shot. Id. at ¶41.

After prescribing the amoxicillin, the defendant did not provide any further care to the plaintiff pertaining to his dental pain. Dkt. No. 31 at ¶20. After the plaintiff suffered a reaction to the amoxicillin the defendant

prescribed for him on October 18, 2019, the plaintiff's medical records were updated to reflect that he had an allergy to amoxicillin. Id. at ¶21.

## II. Analysis

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be

9

admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B. Eighth Amendment Standard

The court analyzes a plaintiff's claim that prison staff were deliberately indifferent to his serious medical needs under the Eighth Amendment's cruel and unusual punishments clause. Estelle v. Gamble, 429 U.S. 97, 104 (1976). An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must show that he "is incarcerated under conditions posing a substantial risk of serious harm." Id. In the context of a claim that prison staff were deliberately indifferent to a plaintiff's serious medical need, the objective component requires the plaintiff to show that his medical need constituted a risk of an objectively serious harm. Stewart v. Wexford Health Sources, Inc., 14 F.4th 757, 763 (7th Cir. 2021) (citing Balsewicz v. Pawlyk, 963 F.3d 650, 654 (7th Cir. 2020)).

To satisfy the subjective component, the plaintiff must demonstrate that the defendant had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015) (citing Farmer, 511 U.S. at 837). "The standard of deliberate indifference 'requires more than negligence or even gross negligence; a plaintiff must show that the defendant was essentially criminally reckless, that is, ignored a known risk.'" Stewart, 14

10

F.4th at 763 (quoting Huber v. Anderson, 909 F.3d 201, 208 (7th Cir. 2018)). The evidence must show the defendant's "actual, personal knowledge of a serious risk, coupled with the lack of any reasonable response to it." Ayoubi v. Dart, 724 F. App'x 470, 474 (7th Cir. 2018) (citing Farmer, 511 U.S. at 837, 844–45).

In the context a claim of deliberate indifference against a medical provider, the subjective component requires the plaintiff to show that the medical professional's treatment decision was "so inadequate that it demonstrated an absence of professional judgment." Stewart, 14 F.4th at 763 (quoting Johnson v. Dominguez, 5 F.4th 818, 826 (7th Cir. 2021)). Put another way,

> "A medical professional is entitled to deference in treatment decisions unless 'no minimally competent professional would have so responded under those circumstances.'" [*Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)] (quoting *Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008)). "To infer deliberate indifference on the basis of a [medical professional's] treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006).

Id.

Doctors can demonstrate deliberate indifference by prescribing medication that they know will cause a severe allergic reaction, especially if there is an alternative. See Thomas v. Pate, 493 F.2d 151, 158 (7th Cir. 1974)[5]

---

[5] The Seventh Circuit decided Thomas before the Supreme Court's opinion in Estelle v. Gamble, 429 U.S. 97 (1976), which established the deliberate indifference standard for medical care claims brought by prisoners. However, Estelle cited Thomas as an example of deliberate indifference. 429 U.S. at 104 n.10.

11

(reversing district court's dismissal of medical treatment claims, concluding that administration of penicillin despite incarcerated person's known allergy to the drug and allegations describing intentional delay in removing sutures while incarcerated person was confined in unsanitary environs "suffice to state claims for relief for intentional mistreatment likely to aggravate his condition"), vacated on other grounds *sub nom.* Cannon v. Thomas, 419 U.S. 813 (1974); see also Adams v. Durai, 153 F. App'x 972, 975 (7th Cir. 2005) (reversing district court's dismissal of case for failure to state a claim and finding plaintiff stated a deliberate indifference claim by alleging treating doctor "administered an unapproved drug that caused potentially serious side effects and then later discontinued his FDA-approved medications altogether").

### C. The Parties' Arguments

The defendant argues that the record does not "show the high level of intentional disregard for a known risk to prove deliberate indifference." Dkt. No. 29 at 9. He asserts that the evidence shows that the plaintiff had no documented allergy to amoxicillin at the time the defendant prescribed it to the plaintiff and that the defendant did not know of and disregard an excessive risk to the plaintiff's health and safety. Id. The defendant argues that even though the plaintiff had a listed allergy to augmentin, he could prescribe the plaintiff amoxicillin because the plaintiff did not have a "listed allergy" to either amoxicillin or penicillin and because he "recalls" the plaintiff telling him that he did not have an allergy to penicillin. Id. at 9-10. The defendant argues that he made a "professional judgment" that he could safely prescribe amoxicillin

12

even though the plaintiff told him that he was allergic to augmentin. Id. at 10. The defendant argues that, at most, he made a mistake, and that mistakes do not constitute deliberate indifference. Id. The defendant also asserts that even if he acted with deliberate indifference, he is entitled to qualified immunity. Id. at 12.

The plaintiff responds that viewing the facts in the light most favorable to him, there are genuine disputes of material fact that preclude summary judgment for the defendant and that he has presented sufficient evidence from which a reasonable jury could find that the defendant acted with deliberate indifference on October 18, 2019. Dkt. No. 68 at 6, 9. The plaintiff states that he has presented evidence that he told the defendant about his allergy to augmentin, that his medical file stated that he was allergic to augmentin and contained information that the plaintiff was allergic to penicillin, that he never told the defendant that he was not allergic to penicillin and that the defendant deliberately overrode the system to prescribe amoxicillin. Id. The plaintiff argues that if a jury believes his version of events, it could conclude that the defendant was informed of the plaintiff's drug allergy and chose to ignore it and prescribe the amoxicillin anyway. Id. at 7. The plaintiff argues that a reasonable jury could draw inferences from the record evidence that the defendant ignored the dangers of an allergic reaction to amoxicillin and that he deliberately exposed the plaintiff to those dangers. Id. at 9.

The defendant replies that even if a jury were to find that he knew of the plaintiff's allergy to amoxicillin or penicillin, "the evidence does not rise to the

13

high level of criminal recklessness . . . required to find a violation of the Eighth Amendment." Dkt. No. 69 at 2. He asserts that even a physician who knows of an allergy might make a "one-time mistake that does not arise to the level of a constitutional violation." Id. He says the record contains no evidence that he knew that the plaintiff would have a severe reaction, and asserts that the plaintiff's arguments amount to a claim that the defendant should have known about the plaintiff's claim that he was allergic to penicillin. Id. at 2-3. He argues that the evidence "points to a possible mistake." Id. at 3.

D. Discussion

For summary judgment purposes, the defendant does not dispute that the risk the plaintiff would have a severe allergic reaction qualifies as an objectively serious medical condition and thus that the plaintiff has satisfied the objective component of a deliberate indifference claim. Dkt. No. 29 at 7 n.2. The court will focus on the Eighth Amendment's subjective element.

The parties' facts are diametrically opposed. The plaintiff says that he told the defendant of his allergy to augmentin, that that allergy and his allergy to penicillin were documented in the medical records and that the defendant nonetheless prescribed him a medication in the same family as augmentin and amoxicillin. The defendant says that the plaintiff convinced the defendant that the plaintiff was not allergic to anything. If a jury were to believe the plaintiff's version of the facts, it could conclude that the defendant was aware of an actual risk to the plaintiff—the risk that he could have an allergic reaction to a

14

drug in the same family as a drug to which he was allergic—yet prescribed a drug that could cause such a reaction despite the existence of other options.

The defendant cites Chandler v. Syed, No. 19-cv-138-bbc, 2020 WL 1955443 (W.D. Wis. April 23, 2020), in support of his contention that "mistakenly prescribing a medication that an inmate is allergic to does not rise to the level of deliberate indifference." Dkt. No. 29 at 10. In Chandler, a nurse examined an incarcerated person who complained of pain after dental work. Id. at *1. The nurse met with the plaintiff and noted in his medical records that she asked him about his penicillin allergy and that he stated he had no problem or reaction to amoxicillin. Id. The nurse told the doctor about the plaintiff's tooth and the doctor prescribed amoxicillin. Id. The plaintiff did not know that amoxicillin *was* penicillin, and the doctor stated that he would not have ordered amoxicillin if he had known that the plaintiff was allergic to penicillin. Id. The plaintiff suffered an allergic reaction and a dentist later told him that he should not take amoxicillin because it is a form of penicillin. Id. at *2. The court determined that the plaintiff had not submitted evidence that would support a constitutional claim against the nurse. Id. at *3. The court explained that while perhaps the nurse should have done more to confirm with the plaintiff or the doctor that the plaintiff could take amoxicillin safely, the plaintiff had not shown that the nurse's failure to do so was anything more than a one-time mistake, and that the record did not contain evidence to support a conclusion that the nurse knew the plaintiff would have a severe allergic reaction to the amoxicillin, but gave him the medicine anyway. Id.

15

Chandler is distinguishable; in this case, the plaintiff does not claim that the defendant made a mistake. The plaintiff has alleged that the defendant knew of his allergy but overrode the alert in the system and prescribed the amoxicillin anyway. A reasonable jury could conclude that the defendant knew the plaintiff was allergic to augmentin and penicillin, that the defendant therefore knew the plaintiff could have a severe allergic reaction because of his allergy to a drug in the penicillin family and that the defendant nonetheless overrode the system and prescribed the plaintiff a synthetic form of penicillin (amoxicillin). The defendant has conceded that he was aware of alternative medications; if a jury concluded that he was aware of the plaintiff's allergy to augmentin and penicillin, it could conclude that the defendant's failure to prescribe an alternative and his choosing to override the system to prescribe the amoxicillin constituted treatment so inadequate that it constituted an absence of professional judgment.

Construing the facts in the light most favorable to the plaintiff, there is evidence from which a jury could find that the defendant acted with deliberate indifference when he overrode the medication system flagging the plaintiff's allergy and prescribed the plaintiff amoxicillin. See Haley v. Olin, No. 3:15-CV-0473-NJR-GCS, 2019 WL 2493453, at *3 (S.D. Ill. Feb. 15, 2019), report and recommendation adopted, 2019 WL 1748586 (S.D. Ill. Apr. 19, 2019) (citing Greeno v. Daley, 414 F.3d 645, 654 (7th Cir. 2005) (noting that a prisoner who receives some treatment may still pursue an Eighth Amendment claim if the plaintiff can demonstrate that the care received was "blatantly inappropriate.").

16

The defendant argues that if the court concludes there are genuine disputes of material fact about whether he was deliberately indifferent, he nonetheless is entitled to qualified immunity. The qualified immunity doctrine protects government officials from civil liability when they perform discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Put simply," says the Supreme Court, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" Mullenix v. Luna, 577 U.S. 7, 12 (2015) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). Once the defense is raised, the plaintiff bears the burden to defeat it. Weinmann v. McClone, 787 F.3d 444, 450 (7th Cir. 2015).

At the summary judgment stage, to determine whether a defendant is entitled to qualified immunity, a court must engage in a two-part analysis; it must determine (1) whether the facts, viewed in the light most favorable to the non-movant, establish the violation of a constitutional right, and (2) whether the constitutional right at issue was "clearly established" at the time of the official's purportedly illegitimate conduct. Leiser v. Kloth, 933 F.3d 696, 701 (7th Cir. 2019). A right is clearly established when its contours are "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Reichle v. Howards, 566 U.S. 658, 664 (2012) (internal quotations and alterations omitted). Courts should "not require a case directly on point, but existing precedent must have placed the statutory or

17

constitutional question beyond debate." Ashcroft v. al–Kidd, 563 U.S. 731, 741 (2011). The Supreme Court has emphasized "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" White v. Pauly, 137 S. Ct. 548, 552 (2017) (quoting Ashcroft, 563 U.S. at 742). The "clearly established law" must instead "be particularized to the facts of the case." White, 137 S. Ct. at 552 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

The defendant contends that he is entitled to qualified immunity because it is undisputed that the plaintiff had no documented allergy to penicillin or amoxicillin when the defendant prescribed it. Dkt. No. 29 at 14. As the court's recitation of the evidence demonstrates, the defendant misstates the record, which shows that the plaintiff's penicillin allergy was noted in some parts of his medical file. The defendant's argument ignores the fact that the plaintiff claims that he told the defendant that he was allergic to augmentin and that he never told the defendant he was not allergic to penicillin. The defendant was aware that amoxicillin was a form of penicillin and that a person allergic to penicillin probably would suffer an allergic reaction to amoxicillin. Finally, Supreme Court and Seventh Circuit case law clearly state that an incarcerated person has a clearly established right not to be knowingly prescribed a medication to which he was allergic. The defendant is not entitled to qualified immunity.

### III. Conclusion

The court **DENIES** the defendant's motion for summary judgment. Dkt. No. 28.

The court **ORDERS** that counsel must appear for a telephonic status conference on **October 19, 2022 at 3:00 PM** to discuss next steps in the case. Counsel is to appear by calling the court's conference line at 888-557-8511 and entering access code 4893665#.

Dated in Milwaukee, Wisconsin this 23rd day of September, 2022.

**BY THE COURT:**

_____

**HON. PAMELA PEPPER**
**Chief United States District Judge**